UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| RICHARD A. RUDOLPH | : | |
| Plaintiff | : | |
| | : | |
| v. | : | CIVIL ACTION NO. |
| | : | 3-03-cv-00298 (JCH) |
| SYCAMORE NETWORKS | : | |
| Defendants | : | |
| | : | OCTOBER 25, 2004 |

**RULING ON DEFENDANT'S**
**MOTION TO DISMISS THE COMPLAINT OR, ALTERNATELY, FOR SUMMARY**
**JUDGMENT AND TO ENFORCE THE SETTLEMENT AGREEMENT [DKT. NO. 8]**

The plaintiff, Richard A. Rudolph, is a former employee of the defendant,

Sycamore Networks ("Sycamore"), and has filed this age discrimination action alleging

that Sycamore wrongfully discharged Rudolph in violation of the Age Discrimination in

Employment Act as well as Connecticut law.  Sycamore claims that Rudolph has failed

to state a claim upon which relief can be granted because Rudolph, in a settlement

agreement predating this litigation, released his claims.  In the alternative, Sycamore

claims that it is entitled to summary judgment on Rudolph's claims and that it is entitled

to enforcement of the aforementioned settlement agreement.

## I.    FACTUAL BACKGROUND

We consider the facts in the light most favorable to the plaintiff.  In the summer

of 2001, Richard Rudolph, then fifty years old, was discharged by Sycamore Networks,

Inc.  Rudolph alleges that the discharge constitutes an illegal discriminatory practice for

the purposes of Connecticut General statutes Sections 46a-60 et seq. and the federal

Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 et seq.  Rudolph

further claims that the discharge was intended to interfere with the vesting of retirement

benefits in violation of the Employee Retirement Income Security Act (ERISA), 29

U.S.C. § 1001 et seq.

Rudolph's complaint makes no reference to a settlement agreement between

himself and Sycamore.  In response to Sycamore's argument that the court ought to

consider an alleged oral settlement agreement entered into by the parties in April 2002,

Rudolph submits an affidavit in which he alleges that the parties reached agreement in

July 2002 and that the agreement differed materially from the agreement Sycamore

alleges was reached.  In addition, Rudolph argues that the agreement reached on or

about July 16, 2002 was repudiated by Sycamore on or about July 17, 2002.

## II.    DISCUSSION

## A.    Introduction

Arguing that Rudolph has released his claims, Sycamore have moved for

dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  In the

alternative, Sycamore argues that it is entitled to summary judgment on the basis that

the settlement agreement allegedly entered into by the parties in April of 2002 is

enforceable by this Court.

## B.    Standard of Review.

A Rule 12(b)(6) motion to dismiss tests only the adequacy of the complaint.

United States v. City of New York, 359 F.3d 83, 87 (2d Cir. 2004).  As a result, such a

motion may only be granted if "it appears beyond doubt that the plaintiff can prove no

set of facts in support of his claim which would entitle him to relief."  Conley v. Gibson,

355 U.S. 41, 45-46 (1957).  In considering such a motion, the court must accept the

factual allegations alleged in the complaint as true and all inferences must be drawn in

the plaintiff's favor.  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other

grounds, Davis v. Scherer, 468 U.S. 183 (1984).  A Rule 12(b)(6) motion to dismiss

cannot be granted simply because recovery appears remote or unlikely on the face of a

complaint.  Bernheim v. Litt, 79 F.3d 318, 321 (2d Cir. 1996).  "The issue is not whether

a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to

support the claims."  Id. (quotation omitted).  However, "[w]hile the pleading standard is

a liberal one, bald assertions and conclusions of law will not suffice."  Leeds v. Meltz, 85

F.3d 51, 53 (2d Cir. 1996).

In a motion for summary judgment, the burden is on the moving party to

establish that there are no genuine issues of material fact in dispute and that it is

entitled to judgment as a matter of law.  See, FED.R.CIV.P. 56(c); Anderson v. Liberty

Lobby, Inc., 477 U.S. 242, 256 (1986); White v. ABCO Eng'g Corp., 221 F.3d 293, 300

(2d Cir. 2000).  A court must grant summary judgment "'if the pleadings, depositions,

answers to interrogatories, and admissions on file, together with affidavits, if any, show

that there is no genuine issue as to any material fact . . . .'"  Miner v. Glen Falls, 999

F.2d 655, 661 (2d Cir. 1993) (citation omitted).  A dispute regarding a material fact is

genuine "'if the evidence is such that a reasonable jury could return a verdict for the

nonmoving party.'"  Aldrich v. Randolph Cent. Sch. Dist., 963 F.2d 520, 523 (2d Cir.

1992) (quoting Anderson, 477 U.S. at 248), cert. denied, 506 U.S. 965 (1992).  After

discovery, if the nonmoving party "has failed to make a sufficient showing on an

essential element of [its] case with respect to which [it] has the burden of proof," then summary judgment is appropriate. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

When a motion for summary judgment is supported by documentary evidence and sworn affidavits, the nonmoving party "may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." FED.R.CIV.P. 56(e); see also Anderson, 477 U.S. at 256 (1986). The nonmoving must present "significant probative evidence to create a genuine issue of material fact." Soto v. Meachum, Civ. No. B-90-270 (WWE), 1991 WL 218481, at *6 (D. Conn. Aug. 28, 1991). Further, a party may not rely "on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2d Cir. 1986), cert. denied, 480 U.S. 932 (1987).

The court resolves "all ambiguities and draw[s] all inferences in favor of the nonmoving party in order to determine how a reasonable jury would decide." Aldrich, 963 F.2d at 523. Thus, "[o]nly when reasonable minds could not differ as to the import of the evidence is summary judgment proper." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir.), cert. denied, 502 U.S. 849 (1991). See also Suburban Propane v. Proctor Gas, Inc., 953 F.2d 780, 788 (2d Cir. 1992). A party may not create a genuine issue of material fact by presenting contradictory or unsupported statements. See Securities & Exchange Comm'n v. Research Automation Corp., 585 F.2d 31, 33 (2d Cir. 1978). Nor may he rest on the "mere allegations or denials" contained in his pleadings. Goenaga

v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995).  See also Ying

Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993) (holding that party may

not rely on conclusory statements or an argument that the affidavits in support of the

motion for summary judgment are not credible).

> **C.    Rudolph's Complaint States a Claim Upon Which Relief Can Be Granted and Is Not Subject to Dismissal**

Rudolph's complaint alleges that Sycamore wrongfully discharged him, in

violation of his employment contract as well as state and federal law.  Rudolph claims

that he suffered lost wages and benefits as a result of the discharge.  Accepting his

allegations as true, Rudolph is entitled to relief under both federal and state law.  On

the face of his complaint, he has successfully stated a claim upon which relief can be

granted.

Sycamore asks that the court look beyond the complaint and consider affidavits

attached to its motion to dismiss that allegedly evidence a settlement agreement,

entered into by Sycamore and Rudolph on April 30, 2002.  Sycamore argues that,

although Rudolph did not reference the agreement in his complaint, the agreement can

be considered in the context of Sycamore's motion to dismiss because 1) Rudolph had

actual notice of the agreement, and 2) the agreement is integral to the complaint

because the complaint must rest on Rudolph's implicit belief that the agreement is void.

See Yak v. Bank Brussels Lambert, BBL Holdings, Inc., 252 F.3d 127, 130 (2d Cir.

2001).  This court may look to "documents either in plaintiffs' possession or of which

plaintiffs had knowledge and relied on in bringing suit."  Brass v. American Film

Technologies, Inc., 987 F.2d 142, 150 (2d Cir. 1993) (citing Cortec Indus., Inc. v. Sum

Holding L.P., 949 F.2d 42, 47-48 (2d Cir.1991), cert. denied, 503 U.S. 960 (1992)).

      In addition, Sycamore cites ample case law regarding the enforceability of oral

contracts.  This court has no doubt that such agreements are enforceable.

Unfortunately for Sycamore, however, analysis of a party's motion to dismiss cannot

include consideration of an alleged agreement, the existence and terms of which are

disputed.  Sycamore accurately points out that the plaintiff in Yak contested the validity

of the admitted document, a consulting agreement including a waiver of benefits.  Yak

did not, however, contest the existence or the terms of the agreement.  Even with

respect to the agreement's validity, the court did not simply accept the agreement as

valid.  It took the document under consideration in the Rule 12(b)(6) motion, but did not

thereupon dismiss the plaintiff's complaint.  Questions of law remained to be

determined with respect to the validity and effect of the agreement.

      In the instant case, there is no document representing the alleged agreement

provided by the defendant.  Instead, the defendant relies on the session notes of one of

its attorneys and affidavits evidencing an oral agreement between Rudolph and

Sycamore, including a release of all claims by Rudolph.  Aff. of Elise M. Bloom, Esq.

[Dkt. No. 10], Ex. 2.  Sycamore submits three affidavits.  The first affidavit is that of the

Connecticut Commission on Human Rights investigator who mediated the session,

where Sycamore and Rudolph allegedly reached an agreement, as well as a later

session two months later.  Mot. to Dismiss the Compl. or, Alternatively, for Summ. J.

and to Enforce the Settlement Agreement [Dkt. No. 8] (hereinafter "Mot. to Dismiss").

Sycamore also submits the affidavits of two of its attorneys who represented Sycamore

at those sessions.  Id.  According to the affidavits and Attorney Bloom's notes, the

parties agreed that Sycamore would give Rudolph 6,011 shares of Sycamore stock,

$8,000 in attorney fees, and $14,000 cash to Rudolph.  Shortly after the terms were

determined, Sycamore realized that it was unable to provide shares and offered instead

to provide the cash value of Sycamore's shares, which are publicly traded.  Rudolph, in

turn, has submitted an affidavit alleging that the agreement was reached not in April of

2002 but, instead, at the later session in July 2002, and that the terms included not the

payment of shares of stock, but of stock options.  Aff. of Richard Rudolph [Dkt. No. 14].

According to Rudolph, Sycamore repudiated the agreement almost immediately

because it was unable to provide stock options and, instead, offered cash.  Rudolph

refused the cash substitute because "it represented a significant devaluation in the

settlement amount."  Id.

       Consideration of the alleged oral agreement need not, indeed cannot, result in

the court's acceptance of that agreement as dispositive fact.  This court's consideration

of the evidence Sycamore puts forward to prove that the alleged agreement exists and

is enforceable simply does not entitle the court to find that the alleged agreement

forecloses Rudolph's claim for relief.  Questions of both fact and law remain.  In

addition to the question of whether the agreement exists and, if so, what its terms are,

there are questions of the alleged agreement's effect and whether Rudolph is bound by

it given that Sycamore, arguably, repudiated the agreement.

**D.    Sycamore's Alternative Motion for Summary Judgment Requires an Evidentiary Hearing**

Sycamore points to a First Circuit case that prohibits district courts from "summarily deny[ing] enforcement [of a settlement agreement] simply because material facts are in dispute."  Bandera v. City of Quincy, 344 F.3d 47, 52 (1st Cir. 2000).  In Bandera, the First Circuit held that "the district court could not refuse enforcement of the [settlement] agreement without holding an evidentiary hearing."  Id. at 51.  The district court in Bandera had instead allowed the case to go to trial while effectively finding that the settlement agreement simply did not exist.

Circuits have split on the question of whether federal courts ought to apply federal law to determine whether a settlement is enforceable where the underlying action is brought under federal law.  Quint v. A.E. Staley Mfg. Co., 246 F.3d 11 (1st Cir. 2001) (finding that federal law applies under these circumstances); c.f. Makins v. District of Columbia, 277 F.3d 544, 547 (D.C. Cir. 2002) (holding that whether or not an action is brought under federal law, "whether the parties have reached a settlement is a matter of local law").  In this case, the agreement was reached not in the context of federal litigation but in the context of a state-level administrative hearing.  Therefore, Connecticut law will govern the enforceability of the alleged settlement agreement.[1]

Sycamore correctly argues, under Connecticut law, "[a] trial court has the inherent power to enforce summarily a settlement agreement as a matter of law where

---

1. In addition, the Second Circuit has held that, even where federal law regarding enforceability controls, state rules of decision serve as appropriate and convenient measures where federal courts must address contract enforceability.  VKK Corp. V. National Football League, 244 F.3d 114, 121-22 (2d Cir. 2001).

the terms of the agreement are clear and unambiguous." <u>Audubon Parking Assocs.</u>

<u>Ltd. P'ship v. Barclay and Stubbs, Inc.</u>, 225 Conn. 804, 812 (1993). In the current case,

however, the terms of the agreement are neither clear nor unambiguous. Where the

parties dispute the date that an <u>oral</u> agreement was reached, the basic fact that a

meeting of the minds took place must be called into question. Furthermore, there is a

disagreement regarding the terms of the alleged agreement over a material term,

whether the agreement called for provision of shares of stock or stock options. In this

case, "convincing proof that a settlement has been reached" cannot be presented at

this stage of litigation. <u>Janneh v. GAF Corporation</u>, 887 F.2d 432, 433 (2d Cir. 1989).

These questions of fact regarding the terms of the oral agreement preclude summary

judgment. Where the terms of a settlement agreement are ambiguous, as they

certainly are in this case, a court cannot summarily enforce the agreement.

Sycamore insists that under these circumstances an evidentiary hearing is

appropriate. "When parties agree to settle a case, they are effectively contracting for

the right to <u>avoid</u> a trial." <u>Audubon</u>, 225 Conn. at 813. Connecticut courts have

concluded that, while "parties who have agreed to settlements may have a contractual

right not to go to trial, that right is not of a constitutional or statutory nature." <u>Sharon</u>

<u>Motor Lodge, Inc. v. Tai</u>, 82 Conn.App. 148, 158 (Conn. App. 2004), <u>cert.</u> <u>denied</u> 269

Conn. 908 (2004). Nevertheless, public policy considerations point to the use of

evidentiary hearings to resolve questions of fact and law with respect to settlement

agreements so that parties entering legitimate settlement agreements receive the

benefit of their bargain and are not forced to go to trial to vindicate their bargained-for

right not to go to trial.  Therefore, rather than submit the questions of fact with respect to the alleged settlement agreement to a jury, both Connecticut and federal courts have considered such questions in the course of an evidentiary hearing.  See Martens v. Thomann, 273 F.3d 159 (2nd Cir. 2001); Rothenberg v. Kamen, 735 F.2d 753 (2nd Cir. 1984); New Horizon Financial Services, LLC v. First Financial Equities, Inc., 278 F. Supp. 2d 259 (D.Conn. 2003); Johnson v. Schmitz, 237 F. Supp. 2d 183 (D.Conn. 2002); Valentine v. Metropolitan Life Ins. Co., 2003 WL 21576161 (S.D.N.Y. 2003); Marisol A. ex rel. Forbes v. Giuliani, 157 F. Supp. 2d 303 (S.D.N.Y. 2001); Sharon Motor Lodge, Inc. V. Tai, 82 Conn. App. 148, 158 (Conn. App. 2004).  The fact that the settlement agreement was reached outside of and prior to the instant litigation is immaterial.  See Sims-Madison v. Inland Paperboard and Packaging Inc., 379 F.3d 445, 449 (7th Cir. 2004) (holding that "[a]lthough a district court has the inherent authority to summarily enforce a settlement agreement [reached in the course of mediation prior to plaintiff's filing of a federal lawsuit], when the existence or terms of a settlement agreement are in dispute, the district court should hold an evidentiary hearing to resolve the disputes or ambiguities").

## III.   CONCLUSION

For the reasons discussed above, the defendant's motion to dismiss is DENIED.  The defendant's motion for summary judgment will be considered following an evidentiary hearing regarding remaining questions of law and fact.  The hearing is scheduled for **DECEMBER 14, 2004 at 10:00 a.m.**

10

**SO ORDERED**

Dated at Bridgeport, Connecticut this 25th day of October, 2004.


/s/ Janet C. Hall
Janet C. Hall
United States District Judge